IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| OPTICS INNOVATIONS, LLC, <br><br>     *Plaintiff*, <br><br> v. <br><br> SAMSUNG ELECTRONICS, CO. LTD., SAMSUNG ELECTRONICS AMERICA, INC. <br><br>     *Defendants*. | Civil Action No. 2:24-CV-1048 <br><br> JURY TRIAL DEMANDED |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Optics Innovations, LLC by and through its undersigned counsel, files this Complaint against Defendants Samsung Electronics, Co. Ltd. and Samsung Electronics America, Inc. (collectively, "Samsung" or "Defendants") for infringement of United States Patent Nos. 10,687,708, and 10,623,705, (collectively, "Asserted Patents") (copies of the Asserted Patents attached as Exhibits A and B), and alleges as follows:

## NATURE OF THE ACTION

1.      This is a civil action for infringement of the Asserted Patents arising under the patent laws of the United States, Title 35 of the United States Code, to obtain damages resulting from Defendants' unauthorized actions of making, having made, using, selling, having sold, offering to sell, importing, or having imported into the United States products that infringe or indirectly infringe of one or more claims of the Asserted Patents.

1

**THE PARTIES**

2.      Plaintiff Optics Innovations, LLC ("Optics" or "Plaintiff") is a corporation organized and existing under the laws of the state of Delaware with a place of business at 533 Congress Street, Portland, ME.

3.      On information and belief, Defendant Samsung Electronics Co., Ltd. ("SEC") is a corporation organized and existing under the laws of the Republic of Korea.

4.      On information and belief, Defendant SEC has a principal place of business at 129, Samsung-ro, Yeongtong-gu, Suwon-si, Gyeonggi-Do, Republic of Korea 443-742.  SEC may be served pursuant to Federal Rule of Civil Procedure 4(f)(1).

5.      Defendant Samsung Electronics America, Inc. ("SEA") is a wholly owned subsidiary corporation of SEC.  SEC exercises direction and control over the performance of SEA.  Alternatively, Defendants form a joint business enterprise such that the performance by one Defendant is each attributable to the other Defendant.

6.      SEA is organized and existing under the laws of New York with a principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660. SEA may be served with process through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

7.      SEA is registered to do business in the State of Texas and has been since at least June 10, 1996.  SEA maintains offices and/or other facilities at least at 6625 Excellence Way, Plano, Texas 75023.

8.      Upon information and belief, SEA employs full-term personnel such as sales personnel and engineers in this District.

9.      In addition, Samsung has authorized sellers and sales representatives that offer and sell products pertinent to this Complaint throughout the State of Texas, including in this District, and to consumers throughout this District.

10.     Samsung offers its products and services, including the products accused of infringement in this Complaint, to customers and potential customers located in the Eastern District of Texas.

## JURISDICTION AND VENUE

11.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 10 above.

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States.

13.     This Court has personal jurisdiction over Defendants in this action pursuant to due process and the Texas Long Arm Statute at least because, through each respective Defendant's own acts and/or through the acts of each other Defendant acting as its agent, representative, or alter ego, they (i) have a presence or regular and established place of business in the State of Texas and this District; (ii) have purposefully availed themselves of the rights and benefits of the laws of the State of Texas and this District; (iii) have done and are doing substantial business in the State of Texas and this District, directly or through intermediaries, both generally and, on information and belief, with respect to the allegations in this Complaint, including their one or more acts of infringement in the State of Texas and this District; (iv) maintain continuous and systematic contacts in the State of Texas and this District; and/or (v) place products alleged to be infringing in this Complaint in the stream of commerce, directly or through intermediaries, with awareness

that those products are likely destined for use, offer for sale, sale, and/or importation in the State of Texas and this District.

14.     For example, Defendants have authorized retailers and distributors in the State of Texas and this District for the products alleged to be infringing in this Complaint, and Defendants have derived substantial revenues from their infringing acts occurring within the State of Texas and this District.

15.     Defendants have established sufficient minimum contacts with the State of Texas and this District such that they should reasonably and fairly anticipate being brought into court in the State of Texas, including this District, without offending traditional notions of fair play and substantial justice; and Defendants have purposefully directed activities at residents of the State of Texas, including this District. Moreover, the patent infringement claims alleged herein arise out of or are related to one or more of the foregoing activities. On information and belief, a substantial part of the events giving rise to Plaintiff's claims, including acts of patent infringement, have occurred in the State of Texas, including this District.

16.     Venue is proper in this Judicial District as to Defendants under 28 U.S.C. §§ 1391 or 1400(b).

17.     Venue is proper against SEC pursuant to 28 U.S.C. § 1391(c)(3) because SEC is a foreign corporation not resident in the United States, and venue is proper in any district against a foreign corporation.  *See also In re HTC Corp.*, 889 F.3d 1349, 1357 (Fed. Cir. 2018) (holding that "[t]he Court's recent decision in *TC Heartland* does not alter" the application of the general venue statute to foreign defendants).  Venue is further proper as to SEC under 28 U.S.C. § 1391(b)(2) because SEC performs a substantial part of its infringing acts in this District by making, using,

selling, offering to sell, and/or importing infringing products in this District.  Thus, SEC has committed, and continues to commit, acts of patent infringement within this District.

18.     Venue is proper as to SEA pursuant to 28 U.S.C. § 1400(b) because SEA has a regular and established place of business in this District at 6625 Excellence Way, Plano, TX 75203. Additionally, SEA has offered to sell or sold products accused of infringement to actual or potential customers located in this District.

19.     Defendants are properly joined under 35 U.S.C. § 299(a)(1) because Defendants, through their own acts and/or through the acts of other entities acting as their agent, representative, or alter ego, commonly and/or jointly design and/or sell accused products such that at least one right to relief is asserted against Defendants jointly, severally, and in the alternative with respect to the same transactions, occurrences, or series of transactions or occurrences relating to the making, using, selling and/or offering to sell in, and/or importing into the United States the same accused products.

20.     Defendants are properly joined under 35 U.S.C. § 299(a)(2) because Defendants, through their own acts and/or through the acts of other entities acting as their agent, representative, or alter ego, make, use, sell, and/or offer to sell in, and/or import into the United States the same or similar accused products, such that questions of fact will arise that are common to all Defendants.

21.     Upon information and belief, SEC and SEA, acting in consort, have placed the accused products in the stream of commerce, knowing the likely destination of the products in the United States and this District. Upon information and belief, SEC has further purposefully availed itself of the United States and this District by directing SEA to take action in the United States and this District.

22.     Upon information and belief, each Defendant serves as agent, representative, and/or alter ego of each other Defendant for the purposes of conducting business in the United States and this District in relation to making, using, selling, offering to sell, and importing into the United States the accused products.

**THE PATENTS-IN-SUIT**

23.     The Asserted Patents relate to image capture devices.

24.     U.S. Patent No. 10,687,708 ("the '708 Patent"), is entitled "Method and Apparatus For A Compact And High Resolution Mind-View Communicator," and was duly and legally issued on June 23, 2020.  The '708 Patent issued from U.S. patent application Serial Number 16/120,326, filed September 3, 2018 as a continuation of an application that issued as U.S. Patent No. 10,064,552. The term of the '708 Patent has not expired.  The '708 Patent is valid and enforceable, and Optics Innovation is the owner and assignee of all rights, title, and interest in the '708 Patent and, at a minimum, of all substantial rights in the '708 Patent, a copy of which is attached as **Exhibit A**.  As such, Optics Innovation has standing to sue and the right to recover damages for the infringement of the '708 Patent and pursue any and all causes and remedies, whether legal or equitable, related thereto.

25.     U.S. Patent No. 10,623,705 ("the '705 Patent"), is entitled "Method and Apparatus for a Wearable Imaging Device," and was duly and legally issued on April 14, 2020.  The '705 Patent issued from U.S. patent application Serial Number 15/400,399, filed January 6, 2017 as a continuation of an application that issued as U.S. Patent No. 9.894,326 which is a continuation of an application filed June 4, 2010 that issued as U.S. Patent No. 8,872,910.  The term of the '705 Patent has not expired.  The '705 Patent is valid and enforceable, and Optics Innovation is the owner and assignee of all rights, title, and interest in the '705 Patent and, at a minimum, of all

6

substantial rights in the '705 Patent, a copy of which is attached as **Exhibit B**.  As such, Optics Innovation has standing to sue and the right to recover damages for the infringement of the '705 Patent and pursue any and all causes and remedies, whether legal or equitable, related thereto.

26.    Each of the claims of the '708 Patent and the '705 Patent is presumed to be valid.

27.    None of the claims of the Asserted Patents are directed to an abstract idea, and the claims limitations, individually and as an ordered combination, involve more than performance of well understood, routine, and conventional activities previously known to the industry as of the priority dates of the Asserted Patents.

28.    None of the claims of the Asserted Patents are directed toward fundamental economic practices, methods of organizing human activities, an idea itself, or mathematical formulations.

29.    The claims of the Asserted Patents are directed to a specific area of application of digital imaging and thus do not preempt others from using other methods and systems.

30.    The claims of the Asserted Patents also recite more than generic computer functionality and recite elements that were not purely conventional as of the priority dates of the Asserted Patents.

31.    The claims of the Asserted Patents recite specific improvements over prior art and conventional systems, apparatuses, and methods and represent meaningful limitations and/or inventive concepts.  Further, in view of these specific improvements, the claims of the Asserted Patents, when such claims are viewed as a whole and in ordered combination, were not routine, well-understood, conventional, generic, existing, commonly used, well-known previously known, or typical as of the earliest priority date of each of the Asserted Patents.

32.    None of the claims of the Asserted Patents are representative of the Asserted Patents' other claims or claims of the other Asserted Patents.

33.    The Asserted Patents address and overcome the limitations of digital cameras that are of a relatively small form factor. Such cameras typically use smaller lenses and detector chips with lower pixel count and thus a lower image resolution.'708 Patent, 15:56–63; '705 Patent, 9:64–10:5. The Asserted Patents claim inventions that, among other things, comprise at least two cameras which are used to generate an output image that is an improvement over a conventional image generated by a conventional small camera at the time of the Asserted Patents' priority dates.

34.    The '705 Patent is related to the '708 Patent through a shared grandparent patent, U.S. Patent No. 8,872,910.  The subject matter of the Asserted Patents is rooted in digital imaging technology and, as of the priority date, provides an unconventional solution to the problems with creating an image resembling human vision (centrally focused, with blurred peripherals) through use of a multi-camera device to calculate distance to an object in a scene.

35.    The asserted claims of the Asserted Patents are directed to improving digital imaging technology through methods and apparatuses comprising a lower resolution camera and higher resolution camera capable of capturing images of a scene and at least one processor calculating the distance to an object in a scene and producing an output image in which portions of the scene around the object are blurred in a manner that mimics the scene as if were to be viewed by human eyes.

36.    The Asserted Patents describe existing cameras and camcorders that contain zooming features that are required to bring an object much closer to a viewer.  '705 Patent, 2:66-3:7; *see also* '708 Patent, 4:8–14.  The Asserted Patents describe the solution of creating a human eyes view through an arrangement where two cameras capture "two views of every scene, a high

resolution but narrow FOV and a lower resolution but wider FOV (similar to human peripheral view.)"  '705 Patent, 10:57–61.  "[W]ith two lenses [contained in the device], the distance of any object from the camera can be estimated.  '705 Patent, 6:35–37; *see also* '708 Patent, 19:12–16 ("the object distance is estimated via triangulation applied to the scene recording cameras").  The Asserted Patents further describe that "[f]or human like display, the resolution of the peripherals needs to be lowered."  '705 Patent, 12:44–45.

37.   It is the capture by two cameras of two images of a scene containing an object by cameras having different image resolutions and fields of view, and executing a distance calculation of the object in the scene, that allows for the processor to create an output image that mimics that of how human eyes perceive the world (i.e., an object in focus, with out-of-focus periphery).

38.   The asserted claims of the '708 Patent expressly require an imaging apparatus having the capability of capturing first and second images of a scene by cameras having different image resolutions and fields of view as well as, *inter alia*, "calculating, based on at least one of the first image and the second image, the distance of at least one object in the scene from the multi-camera device" and "generating, based at least upon the calculated distance of the at least one object in the scene from the multi-camera device and at least one of the received images, an output image corresponding to a portion of the scene that is within the field of view of the first camera, wherein the output image having at least two image regions, an inner image region and an outer image region, the outer image region surrounding at least partially the inner image region, and at least a subset of the inner image region includes a portion of the at least one object, wherein the image resolution of the inner image region is higher than the image resolution of the first image and the image resolution of the outer image region is lower than the image resolution of the first image, and saving the output image" or, similarly, "calculating, based on at least one of the first

9

image and the second image, the distance of at least one object in the scene from the imaging apparatus" and "generating, based at least upon the calculated distance of the at least one object in the scene from the imaging apparatus, an output image corresponding to a portion of the scene that is within the field of view of the first camera, wherein the output image having at least two image regions, an inner image region and an outer image region, the inner image region surrounded at least partially by the outer image region, wherein the image resolution of the inner image region is higher than the image resolution of the first image and the image resolution of the outer image region is lower than the image resolution of the first image." *See*, *e.g.*, '708 Patent, claims 1 and 8.  These elements improve upon digital camera technology.  In particular, the processor uses the two images of a scene captured by separate cameras to calculate the distance to an object in a scene and effectively applying the distance information to generate an output image that resembles a human eyes' view of the object (i.e., an object in focus, with out-of-focus periphery).  Thus, the asserted claims of the '708 Patent are directed to specific improvements to digital imaging and are not directed to an abstract idea.

39.    The asserted claims of the '708 Patent are directed to a specific field of application, a multi-camera image capture device or method that utilizes a high resolution and lower resolution image to calculate distance from the cameras to an object for the purposes of generating an output image with an inner area with increased resolution and a surrounding area with decreased resolution in order to emphasize the object.  The asserted claims of the '708 Patent therefore do not preempt others from using the general concepts of image enhancement or image alteration.

40.    The asserted claims of the '708 Patent recite more than generic computer functionality and recite elements that were not purely conventional as of its priority date.  The asserted claims of the '708 Patent recite at least the following steps or capabilities which, either

alone or as an ordered combination, were unconventional and unique, and were not well-known, routine, or conventional: capturing first and second images of a scene by cameras having different image resolutions an fields of view as well as "calculating, based on at least one of the first image and the second image, the distance of at least one object in the scene from the multi-camera device" and "generating, based at least upon the calculated distance of the at least one object in the scene from the multi-camera device and at least one of the received images, an output image corresponding to a portion of the scene that is within the field of view of the first camera, wherein the output image having at least two image regions, an inner image region and an outer image region, the outer image region surrounding at least partially the inner image region, and at least a subset of the inner image region includes a portion of the at least one object, wherein the image resolution of the inner image region is higher than the image resolution of the first image and the image resolution of the outer image region is lower than the image resolution of the first image, and saving the output image" or similarly, "calculating, based on at least one of the first image and the second image, the distance of at least one object in the scene from the imaging apparatus" and "generating, based at least upon the calculated distance of the at least one object in the scene from the imaging apparatus, an output image corresponding to a portion of the scene that is within the field of view of the first camera, wherein the output image having at least two image regions, an inner image region and an outer image region, the inner image region surrounded at least partially by the outer image region, wherein the image resolution of the inner image region is higher than the image resolution of the first image and the image resolution of the outer image region is lower than the image resolution of the first image." *See*, *e.g.*, '708 Patent, claims 1 and 8.  These elements were not well-known, routine, or conventional because of at least the capability of using a multi-camera device having two cameras that have different image resolutions and fields of view to

11

capture a scene, and a processor to calculate based on the images the distance to an object within that scene, and use the distance to generate an output image with an inner area with increased resolution and a surrounding area with decreased resolution in order to emphasize the object did not exist in conventional imaging systems as of the priority date of the '708 Patent.

41.     The asserted claims of the '705 Patent expressly require an imaging apparatus having the capability of capturing a first image of a scene that includes an object and a second higher resolution image that is a subset of the first scene and includes the object as well as, *inter alia*, "execute a distance calculation procedure, based upon at least one of the received images, to estimate the distance of at least one point on the object from the portable imaging apparatus," "execute an image blurring procedure, based at least in part upon the estimated distance, to reduce the image resolution of at least a portion of at least one of the received images," and "generate an output image that has at least two image areas, a first area that includes the object and is a subset of the second image, and a second area that at least partially surrounds the first area, wherein: the second area is blurred at least partially as a result of the image blurring procedure, and the resolution of the second area is less than the resolution of the first image." *See*, *e.g.*, '705 Patent, 17:45–59.  These elements improve upon digital camera technology.  In particular, a processor uses two images of a scene captured by separate cameras to calculate the distance to an object in the scene and effectively applying the distance information to generate an output image that resembles a human eyes' view of the object (i.e., an object in focus, with out-of-focus periphery). Thus, the asserted claims of the '705 Patent are directed to specific improvements to digital imaging and are not abstract.

42.     The asserted claims of the '705 Patent are directed to a specific field of application, a multi-camera image capture device or method that utilizes a high resolution and lower resolution

image of a scene to calculate distance from the cameras to an object for the purposes of generating an output image with an inner area with increased resolution and a surrounding area with decreased resolution in order to emphasize the object.  The asserted claims of the '705 Patent therefore do not preempt others from using the general concepts of image enhancement or image alteration.

43.     The asserted claims of the '705 Patent recite more than generic computer functionality and recite elements that were not purely conventional as of its priority date.  The asserted claims of the '705 Patent recite at least the following elements which, either alone or as an ordered combination, were unconventional and unique, and were not well-known, routine, or conventional: "a first camera module having a first field of view, a first image resolution, and a first color filter array, for capturing a first image which is an image of a first scene that includes an object," "a second camera module having a second field of view, a second image resolution that is higher than the first image resolution, and a second color filter array, for capturing a second image, wherein: the second image is an image of a second scene that includes the object, the second scene is a subset of the first scene" and at least one processor configured to "execute a distance calculation procedure, based upon at least one of the received images, to estimate the distance of at least one point on the object from the portable imaging apparatus," "execute an image blurring procedure, based at least in part upon the estimated distance, to reduce the image resolution of at least a portion of at least one of the received images," and "generate an output image that has at least two image areas, a first area that includes the object and is a subset of the second image, and a second area that at least partially surrounds the first area, wherein: the second area is blurred at least partially as a result of the image blurring procedure, and the resolution of the second area is less than the resolution of the first image." *See, e.g.,* '705 Patent, claim 1.  These elements were not well-known, routine, or conventional at least because the capability of using a multi-camera

device having two cameras to capture a scene, calculate the distance to an object within that scene, and use the distance to generate an output image with an inner area with increased resolution and a surrounding area with decreased resolution in order to emphasize the object did not exist in conventional imaging systems as of the priority date of the '705 Patent.

## DEFENDANTS' INFRINGING PRODUCTS

44.    Smartphones have become adept at capturing digital images using multiple built-in cameras with varying lenses.  These cameras offer different features for image effects, including image enhancement, portrait mode, and high dynamic range.  These smartphones contain processors programmed with instructions to capture and enhance images.  These processors work with the several smartphone cameras to apply effects to the images and save each image to memory.

45.    Defendant Samsung makes, uses, sells, offers for sale, and/or imports into the United States a variety of smartphones.  These devices include, among others, the Galaxy series of smartphones and tablets.  Samsung actively markets and supports sales of the Galaxy line through its website and through third-party sellers, such as Best Buy, AT&T, Verizon Wireless, and T-Mobile stores.

46.    Samsung devices are designed to take clear, high resolution digital photographs. Consumers often purchase these products for their ability to generate high resolution photographs with different visual effects.  In order to achieve this, Samsung has designed its smart devices with multiple camera lenses in close proximity, each offering different capabilities and resolutions. These cameras include, for example, a wide-angle lens, an ultra-wide lens, and at least one telephoto lens.

14

47.    Samsung's smart devices include additional camera design modes and features. Portrait mode is one such example, wherein the device utilizes at least two captured images to calculate distances to objects within the image scene in order to emphasize the object by blurring the area around the object, known as the "Bokeh" effect.

**COUNT I: INFRINGEMENT OF
U.S. PATENT NO. 10,687,708**

48.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 47 above.

49.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '708 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing smart devices that embody the inventions claimed in the '708 Patent, in particular, at least claim 1, 3, 7, 8, 9, 11, 13, 14, 16, 17, 18, and 19, within the United States and within this District.  Samsung has been and is engaged in one or more of these direct infringing activities related to its smartphones, including at least: (i) Galaxy S24 Ultra, Galaxy S24+, Galaxy S24; Galaxy S24FE, Galaxy S23 Ultra, Galaxy S23+, Galaxy 23, Galaxy S23 FE, Galaxy S22 Ultra, Galaxy S22+, Galaxy S22, Galaxy S21 Ultra, Galaxy S21+, Galaxy S21, Galaxy S21 FE, Galaxy S20 Ultra, Galaxy S20+, Galaxy S20, Galaxy S20 FE, Galaxy S10+, Galaxy S10, Galaxy S10e, Galaxy S9+, Galaxy Note10+, Galaxy Note10, Galaxy Note Lite, Galaxy Note 9, Galaxy Note20 Ultra, Galaxy Note20, Galaxy Z Fold, Galaxy Z Fold2, Galaxy Z Fold3, Galaxy Z Fold4, Galaxy Z Fold5, Galaxy Z Fold6, Galaxy Z Flip, Galaxy Z Flip3, Galaxy Z Flip4, Galaxy Z Flip5, Galaxy Z Flip6, and Galaxy A15 5G and (ii) any other device, such as tablets, that comprise two or more cameras and includes the Portrait or Live Focus modes (collectively hereinafter the "'708 Samsung Accused Products").

15

50.     Samsung sells the '708 Samsung Accused Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales, including through its website.

51.     Notice of the factual bases of Plaintiff's allegations of infringement by the '708 Accused Products is provided in the claim charts attached as **Exhibits C–E**.[1]  Exhibits C–E demonstrate how the '708 Patent is infringed by reference to the Galaxy S24 Ultra, Galaxy ZFold6, and Galaxy A15 5G devices, which, on information and belief, are representative of the infringing aspects of at least the Galaxy phones identified in Paragraph 49.  The attached infringement charts are based on Plaintiff's current understanding of the '708 Samsung Accused Products based on information publicly available at the of this filing. This selection of claims and products should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery.

52.     Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '708 Patent, including at least claims 1, 3, 7, 8, 9, 11, 13, 14, 16, 17, 18, and 19, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others.  Samsung's customers directly infringe at least by using the '708 Samsung Accused Products.  Samsung retail partners, distributors, and resellers directly infringe at least by selling and offering for sale such products.

53.     Samsung has actual notice of the '708 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of Samsung

---

[1] The exhibits illustrate the infringement of the respective devices as to the asserted apparatus claims.  The asserted method claims are likewise infringed on the same bases as addressed regarding the apparatus claims.

obtaining any actual knowledge of the '708 Patent prior to commencement of this lawsuit will be confirmed during discovery.

54.    Samsung indirectly infringes the '708 Patent by inducing third parties, including customers, to use the '708 Samsung Accused Products in their normal and customary way and for their intended purpose.  For example, on information and belief, Samsung also induces such third parties by (i) selling the '708 Samsung Accused Products to third parties when such products are designed to infringe the '708 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '708 Patent; (iii) providing technical support, specifications, user guides, manuals, technical information, and instructions for operating the '708 Samsung Accused Products in their customary way; (iv) advertising and promoting the '708 Samsung Accused Products, including assisting purchasers in locating local dealers for specific smart devices, through its website and various promotional materials; and/or (v) providing ongoing warranties, support, maintenance, and registration to such third parties relating to the '708 Samsung Accused Products.

55.    Upon information and belief, Samsung knows that its customers, distributors, and resellers follow and/or use Samsung's support, instructions, user guides, and technical specifications and use, offer to sell, or sell the '708 Samsung Accused Products within the United States.  Samsung directly benefits from and actively and knowingly encourages customers', distributors', and resellers' use, sale, and/or offer for sale of the '708 Samsung Accused Products.

56.    On information and belief, Samsung will continue to engage in activities to encourage customers, distributors, and resellers that will constitute inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct

17

infringement and/or willful blindness of a high probability that the activities result in the infringement of the '708 Patent.

57.    Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has contributed to and/or will continue to contribute to the direct infringement by customers, resellers and/or end users of infringing smart devices pursuant to 35 U.S.C. § 271(c) in this District and elsewhere in the United States at least by providing the Accused Products for use in practicing the patented method, knowing that such devices are material to the invention claimed by at least claims 1, 3, and 7of the '708 Patent, and are especially made or especially adapted for use in infringing the patented method and are not a staple article or commodity of commerce suitable for substantial non-infringing use.

58.    Samsung's direct and indirect infringement of the '708 patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

59.    On information and belief, Samsung continues to infringe the '708 Patent by making, using, selling, offering for sale and/or importing in the United States the '708 Samsung Accused Products and by inducing and/or contributing to the direct infringing use of the '708 Samsung Accused Products by others, in reckless disregard of Plaintiff's patent rights.  Samsung continues its infringement notwithstanding actual knowledge of the '708 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '708 Patent. Samsung's infringement of the '708 Patent, following its knowledge of the '708 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled

18

to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

60.    On information and belief, Samsung will continue intentionally and deliberately infringing, notwithstanding actual knowledge of the '708 Patent. Samsung's future acts of infringement will constitute continuing willful infringement of the '708 Patent.

**COUNT II: INFRINGEMENT OF
U.S. PATENT NO. 10,623,705**

61.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 to 60 above. Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, has in the past and continues to directly infringe the '705 Patent pursuant to 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, having made, using, selling, offering to sell, and/or importing smart devices that embody the inventions claimed in the '705 Patent, in particular, at least claims 1, 3, 5, and 9, within the United States and within this District. Samsung has been and is engaged in one or more of these direct infringing activities related to its smartphones, including at least: (i) Galaxy S24 Ultra, Galaxy S24+, Galaxy S24; Galaxy S24FE, Galaxy S23 Ultra, Galaxy S23+, Galaxy 23, Galaxy S23 FE, Galaxy S22 Ultra, Galaxy S22+, Galaxy S22, Galaxy S21 Ultra, Galaxy S21 FE, Galaxy S20 Ultra, , Galaxy S20 FE, Galaxy Note20 Ultra, Galaxy Z Fold4, Galaxy Z Fold5, and Galaxy Z Fold6,  and (ii) any other device, such as tablets, that comprise two or more cameras, includes the Portrait or Live Focus modes, and the field of view of the higher resolution camera is between 2 to 5 times smaller than the lower resolution camera(collectively hereinafter the "'705 Samsung Accused Products").

62.    Samsung sells the '705 Samsung Accused Products to distributors, retailers, and/or other customers throughout the United States, and actively markets and supports sales, including through its website.

63.     Notice of the factual bases of Plaintiff's allegations of infringement by the '705 Accused Products is provided in the claim charts attached as **Exhibits F–G**.  Exhibits F–G demonstrate how the '705 Patent is infringed by reference to the Galaxy S24 Ultra and Galaxy Z Fold6, which, on information and belief, are representative of the infringing aspects of at least the Galaxy phones identified in Paragraph 61.  The attached infringement charts are based on Plaintiff's current understanding of the '705 Samsung Accused Products based on information publicly available at the of this filing. This selection of claims and products should not be considered limiting of Samsung's infringement. Additional claims and products will be disclosed, as appropriate, in compliance with this Court's rules related to infringement contentions and discovery.

64.     Samsung, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, is indirectly infringing the '705 Patent, including at least claims 1, 3, 5, and 9, pursuant to 35 U.S.C. § 271(b) by actively inducing acts of direct infringement performed by others. Samsung's customers directly infringe at least by using the '705 Samsung Accused Products. Samsung retail partners, distributors, and resellers directly infringe at least by selling and offering for sale such products.

65.     Samsung has actual notice of the '705 Patent and the infringement alleged herein at least upon the service of this Complaint.  The timing, circumstances, and extent of Samsung obtaining actual knowledge of the '705 Patent prior to commencement of this lawsuit will be confirmed during discovery.

66.     Samsung indirectly infringes the '705 Patent by inducing third parties, including customers, to use the '705 Samsung Accused Products in their normal and customary way and for their intended purpose.  For example, on information and belief, Samsung also induces such third

20

parties by (i) selling the '705 Samsung Accused Products to third parties when such products are designed to infringe the '705 Patent in normal and intended modes of operation; (ii) enabling third parties to use the products when such use infringes the '705 Patent; (iii) providing technical support, specifications, user guides, manuals, technical information, and instructions for operating the '705 Samsung Accused Products in their customary way; (iv) advertising and promoting the '705 Samsung Accused Products, including assisting purchasers in locating local dealers for specific smart devices, through its website and various promotional materials; and/or (v) providing ongoing warranties, support, maintenance, and registration to such third parties relating to the '705 Samsung Accused Products.

67.    Upon information and belief, Samsung knows that its customers, distributors, and resellers follow and/or use Samsung's support, instructions, user guides, and technical specifications and use, offer to sell, or sell the '705 Samsung Accused Products within the United States.    Samsung directly benefits from and actively and knowingly encourages customers', distributors', and resellers' use, sale, and/or offer for sale of the '705 Samsung Accused Products.

68.    On information and belief, Samsung will continue to engage in activities to encourage customers, distributors, and resellers that will constitute inducement of infringement, and with the actual intent to cause the acts that it knows or should know would induce direct infringement and/or willful blindness of a high probability that the activities result in the infringement of the '705 Patent.

69.    Samsung's direct and indirect infringement of the '705 patent has injured Plaintiff, and Plaintiff is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284. Unless Samsung ceases its infringing activities, it will continue to injure Plaintiff.

70.    On information and belief, Samsung continues to infringe the '705 Patent by making, using, selling, offering for sale and/or importing in the United States the '705 Samsung Accused Products and by inducing the direct infringing use of the '705 Samsung Accused Products by others, in reckless disregard of Plaintiff's patent rights.  Samsung continues its infringement notwithstanding actual knowledge of the '705 Patent (including through service of this Complaint) and without a good faith basis to believe that its activities do not infringe any valid claim of the '705 Patent. Samsung's infringement of the '705 Patent, following its knowledge of the '705 Patent, is intentional and deliberate and thus willful and Plaintiff is entitled to treble damages and attorneys' fees and costs incurred in this action under 35 U.S.C. §§ 284 and 285.

71.    On information and belief, Samsung will continue intentionally and deliberately infringing, notwithstanding actual knowledge of the '705 Patent. Samsung's future acts of infringement will constitute continuing willful infringement of the '705 Patent.

## JURY DEMANDED

72.    In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

i.    A judgment declaring that Samsung has directly and/or indirectly infringed and is directly and/or indirectly infringing one or more claims of the Asserted Patents;

ii.    A judgment awarding Plaintiff compensatory damages as a result of Samsung's infringement of one or more claims of the Asserted Patents, together with pre- and post-interest and costs, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed;

iii.    A judgment awarding Plaintiff treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Samsung's willful and deliberate infringement of one or more claims of the Asserted Patents;

iv.    A judgment declaring this case exceptional and awarding Plaintiff its expenses, costs, and attorneys' fees in accordance with 35 U.S.C. §§ 284 and 285 and Rule 54(d) of the Federal Rules of Civil Procedure;

v.    A grant of a permanent injunction enjoining Defendants from further acts of infringement of one or more claims of the Asserted Patents without additional compensation to Plaintiff in an amount to be determined by the Court; and

vi.    Such other and further relief the Court deems just and equitable.

Dated: December 13, 2024

/s/ Daniel S. Stringfield,  w/ permission
William E. Davis, III
Daniel S. Stringfield (Admitted E.D. Tex.)
Illinois Bar No. 6293893
dstringfield@nixonpeabody.com
Timothy P. Maloney (Admitted E.D. Tex.)
Illinois Bar No. 6216483
tmaloney@nixonpeabody.com
Randal S. Alexander (Admitted E.D. Tex.)
Illinois Bar No. 6298199
Dragan Gjorgiev (Admitted E.D. Tex.)
Texas Bar No. 24136166
dgjorgiev@nixonpeabody.com
**NIXON PEABODY LLP**
70 W. Madison St. Suite 5200
Chicago, IL 60602
Tel: (312) 977-4400
Fax: (312) 977-4405

Patrick O. Doyle (Admitted E.D. Tex.)
CSB No. 329810
pdoyle@nixonpeabody.com
**NIXON PEABODY LLP**
One Embarcadero Center, 32nd Floor
San Francisco, CA 94111
Tel: (415) 984-8200
Fax: (415) 984-8300

/s/ William E. Davis, III
William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
**DAVIS FIRM, PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

***Attorneys for Plaintiff Optics Innovations, LLC.***

24